**Samuel GOLDBLATT, and Paul M. Lipkin, Plaintiffs,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.**

Civ. A. No. 79–595–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Dec. 18, 1979.

---

Russell Brahm, Moody, McMurran & Miller, Ltd., Portsmouth, Va., for plaintiffs.

Michael A. Rhine, Asst. U. S. Atty., Norfolk, Va., for defendant.

OPINION AND ORDER

CLARKE, District Judge.

The parties to this action are in agreement concerning the essential facts underlying the legal issues presented in this case. The plaintiffs are the owners of a residence located at 3432 Sandfiddler Road, Virginia Beach, Virginia. To protect their investment in this residence, the plaintiffs pur-

chased a policy of flood insurance in March 1974, which listed as the property covered the "1 Family 1 Story Dwelling of Frame, Split-level (stilts) Construction [without basement] located at East side Sandfiddler Rd., Lot 10, Tract D, Section II, Plat of Sandbridge," valued at $35,000, and the contents of that dwelling. This policy was originally underwritten by the National Flood Insurer's Association, to whose interest the defendant succeeded by agreement on January 1, 1978. See 24 C.F.R. § 1911.15 (1978). It was issued pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq.

The plaintiffs had satisfied all of their obligations under this policy and subsequent renewal agreements, and it remained in full force and effect on April 25, 1978, when a flood, caused by a severe storm, eroded a sand dune in front of the insured dwelling and left the septic-tank system and drainage field in a shambles. The plaintiffs have spent $1,220.21 to replace this septic system, and have rebuilt the sand dune at a cost of $300.00.

The narrow issue for determination on the defendant's motion for summary judgment is whether the flood insurance policy which the plaintiffs purchased from the defendant covered this damage.

■ This flood insurance program, as with all similar policies issued under the program established by the National Flood Insurance Act of 1968, was subject to the terms and conditions of that Act, its amendments, and the regulations which it spawned. See 42 U.S.C. § 4013; 24 C.F.R. § 1911.4. As these regulations indicate, insurance coverage under this program is available only for structures and their contents. See 24 C.F.R. § 1911.3. This premise was embodied in the policy issued to the plaintiffs, which expressly covered only the "dwelling" listed, and its contents. It expressly excluded coverage of such surrounding portions of the property as lawns, trees, shrubs, or plants. It is evident, therefore, that the coverage did not extend to

damage to the landscape surrounding the dwelling, including the destruction of the sand dune in front of the plaintiffs' residence. While erosion caused by abnormally high water levels accompanied by violent wave action is considered a "flood" within the meaning of disasters covered by policies under this program, see 24 C.F.R. §§ 1909.1, 1911.4, this does not mean that the erosion itself is an insured damage. Damage to the dwelling or its contents which results from abnormal erosion is covered by the language of the policy; but erosion per se is not. Informed by the terms of the policy itself, and the underlying statutory and regulatory provisions, this is the only meaning which can be attributed to the language contained in the explanatory brochure which was given to the plaintiffs, which stated that "The program also covers beach-erosion losses caused by abnormal water levels and damage from flood-related mud-flows." [1] The policy did not, therefore, cover the cost of rebuilding the sand dune in front of the plaintiffs' dwelling, since that dune was neither a part of the dwelling structure nor its contents.

■ Although the policy covers "building equipment, fixtures and outdoor equipment, all pertaining to the service of the described premises and while within an enclosed structure located on the described premises," it specifically excludes coverage of "underground structures or equipment outside the foundation walls of the dwelling. . . ." This language of the policy, though general, clearly is intended to exclude the full class of underground fixtures and equipment which service the covered dwelling, but which are neither within some protected portion of the dwelling nor otherwise enclosed. The drain field and septic system appurtenant to the plaintiffs' dwelling unambiguously fell within this class of unenclosed, underground structures or equipment excluded from the policy's coverage.

The fact that the dwelling rested on piers and not on a foundation wall does not alter this result. The distinction in the policy

---

1. In view of our reading of this language, we need not reach the issue, raised by the plaintiffs, whether this brochure, or any part of it, was binding on the defendant or became part of the policy.

between structures or equipment within the foundation walls and those outside these walls, together with the other terms of the policy, evidences with sufficient clarity the insurer's intention to exclude coverage of structures such as this septic system which lie beyond the protective enclosure of the dwelling itself. The evidence presented at the hearing in this case indicated that the damaged portions of this system lay beyond the outer perimeter of the building structure or its supporting piers. Therefore, the plaintiffs are not entitled, under the terms of the policy, to recover the cost of rebuilding this system.

The defendant's motion for summary judgment is accordingly GRANTED and this action is DISMISSED.